## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**APRIL LEAH WHITE**                                                                          **PLAINTIFF**

**v.**                                                    Civil Action No.: **4:12-CV-31-HTW-MTP**

**BILL HOWELL, individually, and**
**DONNIE ADKINS, in his former**
**official capacity as Sheriff of**
**Neshoba County, MS**                                                                 **DEFENDANTS**

---

### REPORT AND RECOMMENDATIONS

The Defendants in this 42 U.S.C. § 1983 action seek dismissal of the Plaintiff's claims against them.  Defendant Bill Howell separately moves for summary judgment on the Plaintiff's claims against him in his individual capacity. The Plaintiff opposes the motions and argues that material fact issues remain in this case which warrant a denial of summary judgment. Having considered the motions, case record, and applicable law, the undersigned recommends that the Defendants' motions be granted and that this case be dismissed with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff April Leah White filed her complaint [1] pursuant to 42 U.S.C. § 1983 on February 15, 2012.  This lawsuit arises from events that took place in Neshoba County, Mississippi on March 2, 2009.  White brings this action against the following defendants: Neshoba County Sherriff's Deputy Bill Howell, individually, and Donnie Adkins, in his former official capacity as Sheriff of Neshoba County, Mississippi.

The following factual background is drawn from the parties' submissions.  While they disagree on certain points, the <u>material</u> facts are not in dispute.  On March 2, 2009, White called Neshoba County Justice Court requesting to speak to a deputy regarding retrieving belongings from her sister's residence.  The justice court placed a call to the Neshoba County Central Dispatch to apprise them of the situation.  Deputy Howell was on duty and agreed to meet White at the Neshoba County Sheriff's Department.  At approximately 11:00 a.m., she arrived at the Sheriff's Department and met Howell.  The Plaintiff asked Howell to escort her to the home of her sister, Chastity Perrett,[1] in Sebastopol, Mississippi, to retrieve some possessions of their deceased father that Perrett allegedly borrowed.  Howell explained that he would accompany White to keep the peace, but he could not force her sister to render the possessions.

Upon arriving at Perrett's home, White and Howell approached the back door.  Eventually, Perrett came to the door, and White informed her that she had come to retrieve her property.  According to White, her sister immediately began "spouting out lies" regarding how White had been stalking her and leaving her threatening voicemail messages.  (Dkt. [16-3] at 7).  Perrett told White that Perrett did not have any property belonging to White. Thereafter, White and Perrett had a highly emotional and heated argument, which made clear to Howell that no property would be exchanged that day.

In an effort to diffuse the situation, Howell told White that she was going to have to leave the premises. (Dkt. [16-3] at 8).  White responded, "it was obvious that you really didn't want to come out here with me to begin with. You can leave, and I'll get my things…." *Id.* Thereafter, White admits she became "pretty argumentative" with Howell, while continuing to argue with

---

[1] The parties' submissions also refer to a Chastity *Parrett*. "Perrett" will be used in this opinion for consistency purposes.

her sister. *Id.* at 7.  Howell advised White that they were going to leave or she was going to be arrested.  White refused to leave, telling Howell that he could not arrest her. Because White refused to comply with Howell's command, he informed her she was under arrest.

At this point, the parties' recollections of the events diverge. Howell avers the following. He grabbed White by the left arm and began leading her towards his patrol car.  (Dkt. [16-2] at 8).  While being escorted, White began to resist, even pulling away from him for a moment.  *Id.* at 8, 10; (Dkt. [16-3] at 10).  Howell was able to reach out and grasp White's arm before she got away.  Howell then placed White's hands on the hood of his patrol car in order to search and handcuff her. *Id.*  At that point, White "mule-kicked" Howell.  (Dkt. [16-2] at 11-12).  According to Howell, he was kicked twice – once in the thigh and once in the testicles.  The latter kick caused him to fall to the ground; however, he grabbed White around her neck and pulled her to the ground as he fell backwards.  The arrest was eventually completed with assistance of Officer Todd Currie.  *Id.* at 11, 12.  Howell claims that White never expressed that she was in pain after the arrest. (Dkt. [16-2] at 16).

White, admitting an inability to clearly recall the events, disagrees with Howell's version of the facts.  (Dkt. [16-3] at 8).  According to the Plaintiff, Howell handcuffed her at the backdoor or porch prior to escorting her to the patrol car.  *Id.* at 8, 10.  She claims that both parties exchanged profanities while walking to the patrol car.  *Id.*  Then, Howell allegedly began to "get rough" with the handcuffed White, and slammed her against the hood of his patrol car fracturing her right collarbone.  *Id.* at 10-11.  White admits to "mule-kicking" Howell while handcuffed over the hood of the patrol car, but contends that it was in response to being injured when she was slammed against the car.  *Id.* at 12.  White stated that no other officer assisted in

3

making the arrest.  *Id.*  Several hours after the arrest, officers who are not parties to this suit transported White to Neshoba County General Hospital, where she was diagnosed as having a broken right collarbone and large hematoma on her right shoulder.  *See* (Dkt. [18-2] at 1-8).

On August 31, 2009, White was indicted by the Neshoba County Grand Jury for assaulting Howell in violation of Miss. Code Ann. § 97-3-7(1)(a).  *See* (Dkt. [16-6]).  On November 10, 2009, White pled guilty to simple assault on a law enforcement officer.  *See* (Dkt. [16-7] at 1-12).  White's conviction has never been overturned.

Over two years later, White filed the instant matter.  In this lawsuit, she alleges that Howell used excessive force against her during the 2009 arrest in violation of her constitutional rights.  White contends that the following physical injuries were direct and proximate results of the use of excessive force: a severely fractured right clavicle, a large hematoma on her right shoulder, injuries to the ear and ear drum, fractured right side ribs, and a large hematoma to her right breast area.  *See* (Dkt. [18] at 4).  White contends that Howell's excessive use of force was objectively unreasonable, constituting an unnecessary and wanton infliction of pain in violation of the Fourth Amendment's prohibition against unreasonable seizure and the use of unreasonable and/or excessive force.  Additionally, White complains that former sheriff Donnie Adkins, is vicariously liable for the actions of his deputy, Defendant Howell, under Miss. Code Ann. § 19-25-19.

On March 22, 2012, the Defendants filed a motion to dismiss White's state law claims [6] pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On June 11, 2012, Howell filed a motion for summary judgment as to the federal claims [16].  The undersigned will address

Howell's motion first, as White's state law claim for vicarious liability is contingent upon the continued survival of the federal law claims.

## I. MOTION FOR SUMMARY JUDGMENT AS TO FEDERAL CLAIMS

Rule 56 of the Federal Rules of Civil Procedure guides the Court's analysis in determining whether to grant summary judgment. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To overcome summary judgment, the nonmoving party must present "specific facts showing [that there is] a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). When ruling on a motion for summary judgment, courts must consider the record evidence and draw all reasonable inferences in the nonmoving party's favor. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009). However, in the absence of proof, courts should not assume that the nonmoving party could prove the necessary facts. *Id.*

In his motion, Howell submits two legal bases why summary judgment should be granted in his favor: (1) qualified immunity for government officials, and (2) the "favorable termination" rule (also referred to as the *Heck* rule) as fashioned by the Supreme Court of the United States in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The impact of qualified immunity upon White's claims will be analyzed first.

### A. Qualified Immunity

A government official performing discretionary functions is entitled to qualified immunity unless the official's conduct violates a clearly established right. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). In analyzing whether qualified immunity is proper, a court

5

must determine (1) whether the plaintiff has alleged the violation of a statutory or constitutional right; and (2) whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *See id.*; *see also Flores v. City of Palacios*, 381 F.3d 391, 395 n. 3 (5th Cir. 2004)).

The Fifth Circuit has held that to state a violation of the Fourth Amendment's prohibition against excessive force, "the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and (3) the use of force that was objectively unreasonable." *See Bush*, 513 F.3d at 501. "An injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible – that is objectively unreasonable under the circumstances." *See id.* The need for force to make the arrest determines how much force is constitutionally permissible. *See id.* In considering the reasonableness of the force used under the circumstances, the court should specifically look at the "severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *See id.*; *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct 1865, 104 L. Ed. 2d 433 (1989)).

Here, in viewing the facts in a light most favorable to the nonmoving party, it appears that White has adequately alleged a constitutional violation. Further, as evidence of an injury suffered, White's medical records indicate that she sustained at least a broken right collarbone and large hematoma during the arrest.

Federal courts also consider "whether the officer's use of force, though a violation of the Fourth Amendment, was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred." *See Bush*, 513 F.3d at 501. Although "an officer's use

of force must be objectively unreasonable to violate constitutional rights, a defendant's violation of constitutional rights can still be objectively reasonable if the contours of the constitutional right at issue are sufficiently clear." *See id.* Therefore, "while the right to be free from excessive force is clearly established in a general sense, the right be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer." *See id.* at 502. A court must judge the reasonableness of an officer's conduct by taking into account the "tense, uncertain, and rapidly evolving circumstances in which officers must often make split-second judgments … about the amount of force necessary in a particular situation. *Id.* (citations and internal quotations omitted).  In assessing whether an officer was reasonable in his or her belief that the degree of force used was necessary, a court should use an "on scene perspective rather than the 20/20 vision of hindsight." *Id.* (citations and internal quotations omitted).

At the time of White's arrest, the law was clearly established that the right to make an arrest "'necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it.'" *Sacuier v. Katz*, 533 U.S. 194, 208, 121 S. Ct 2151, 150 L. Ed. 2d 396 (2001) (quoting *Graham v. Conner*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); *see also Bush*, 513 F.3d at 502*.  However, "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Bush*, 513 F.3d at 502.

White avers that she had not given Howell any reason to use increased or excessive force on her. And "while the Fourth Amendment reasonableness test is not capable of precise definition or mechanical application," Howell admitted at his deposition and the test decidedly shows that it would be impermissible and unreasonable for him to slam a restrained and subdued

person onto a vehicle hood. (Dkt. [16-2] at 17); *see id.*; *see also Bush*, 513 F.3d at 502 (holding "the test is clear enough that [the defendant] should have known he could not forcefully slam [the plaintiff's] face into a vehicle while she was restrained and subdued."). Howell acknowledges that, under the circumstances claimed by White, the degree of force alleged to have been used in arresting her would have been clearly unreasonable for an officer, constitutionally impermissible, and consequently could disqualify him from being entitled to qualified immunity.

However, Howell avers that the Plaintiff was never restrained, never slammed against the car, was actively participating in behavior that would have warranted increased force, and committed an unprovoked assault upon him. Clearly, genuine issues of material facts exist regarding whether Howell allegedly violated the Fourth Amendment's prohibition against excessive use of force. As such, the undersigned is of the opinion that summary judgment is not proper on the basis of qualified immunity at this stage of the proceedings.

## B.  Application of *Heck v. Humphrey*

In the alternative, Howell raises the "favorable termination" or *Heck* rule as grounds for dismissal of this matter's federal law claims. A § 1983 claim for damages cannot directly attack the constitutionality of a conviction, imprisonment, or other harm caused by unlawful actions unless that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) (quoting *Heck*, 512 U.S. at 487) (internal quotations omitted). This burden placed on § 1983 plaintiffs is for the purpose of avoiding collateral attacks by

plaintiffs on convictions that are "still outstanding."[2] *See Hudson*, 98 F.3d at 872 (quoting *Heck v. Humphrey*, 512 U.S. 487) (internal quotations omitted).

Absent such circumstances, "the maturity of a § 1983 claim depends on 'whether a judgment in favor of the [p]laintiff … would necessarily *imply* the invalidity of [the plaintiff's] conviction.'" *See id.* (quoting *Heck*, 512 U.S. at 487) (emphasis added).  The alleged constitutional violation should not be barred "if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."  *See Bush v. Strain* 513 F.3d 492, 498 (5th Cir. 2008); *see also, e.g., Ballard v. Barton*, 444 F.3d 391, 401 (5th Cir. 2006) (holding that the excessive force claim against an officer other than the one the plaintiff was convicted of assaulting was "conceptually distinct," and therefore, the two could "easily coexist").  As such, "if the district court determines that [the plaintiff's] action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against [the plaintiff], the action should be allowed to proceed…" *Heck*, 512 U.S. at 487 (emphasis added). This requirement has become known as the "favorable termination rule." *Sappington v. Bartee*, 195 F.2d 234, 234 (5th Cir. 1999).

White's simple assault conviction has not been reversed on appeal, expunged, declared invalid, or otherwise called into question in a habeas proceeding.  Therefore, White's § 1983 claim may be considered only if the Court determines that ruling in White's favor will not necessarily "imply the invalidity" of her simple assault conviction. *Id.*  Applying this test, the

---

[2] "We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." *Heck*, 512 U.S. at 486.

undersigned finds White's excessive force claim is not cognizable under § 1983 and should be dismissed.

The determination of whether excessive force claims brought under § 1983 are barred by *Heck* is an "analytical and fact-intensive" process, which requires courts "to focus on whether success on the excessive force claim… [negates] an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *See Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008). The crux of § 1983 excessive force claims is often whether the plaintiff's criminal conviction is temporally distinct from, *i.e.* took place prior to, during, or after, the alleged excessive use of force.[3] *See id.* ("A claim that excessive force occurred after the arrestee ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance.").

For purposes of the current motion, the Court takes White's version of the facts as the correct one.  In this matter, White avers that she was injured when Howell threw her against the

---

[3] *See also, e.g., Wells v. Cramer*, 158 F. App'x 203, 204 (11th Cir. 2005) (holding that the alleged use of excessive force after the plaintiff was arrested, restrained, and posed no threat to the officers would not necessarily implicate the invalidity of the plaintiff's criminal convictions, including one for resisting arrest*); DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007) (declining to consider the plaintiff's argument that his claims of excessive force were separable from his aggravated assault conviction because that claim was unsupported by his complaint which presented the excessive force claim as a single violent encounter throughout which the plaintiff was wholly innocent); *Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005) (holding that *Heck* did not bar the excessive force claim because the plaintiff's claim that the officer used excessive force after the plaintiff hit him did not undermine the plaintiff's conviction for aggravated battery); *Smithart v. Towery*, 79 F.3d 951, 952–53 (9th Cir. 1996) (reversing dismissal of excessive force claim when plaintiff alleged that the police beat him after his assault on the officers, for which he was convicted, had ended); *Howard v. Del Castillo*, No. 2:00–CV–3466, 2001 WL 1090797, at *4 (E.D. La. Sept.17, 2001) (denying motions to dismiss and for summary judgment because the court could not rule out the possibility that excessive force was used after the plaintiff was in handcuffs and no longer resisting, which, if proved, would not be inconsistent with battery of an officer).

hood of the police car, to which she *responded* by kicking Howell.[4] (Dkt. [19] at 5).  However, even accepting her version as true, a ruling in White's favor on her § 1983 claims would necessarily imply the invalidity of her assault conviction under Mississippi law.

In the matter of *Hudson v. Hughes*, the Fifth Circuit Court of Appeals was confronted with a § 1983 plaintiff who, having been convicted under Louisiana law for battery of an officer, alleged "he was brutally beaten during his arrest, that excessive force was used, and that these facts were unconstitutional." *Hudson v. Hughes*, 98 F.3d 868, 871 (5th Cir. 1996). It was held that *Heck* barred his excessive force claim because the claim called the validity of his prior conviction into question:

> In Louisiana, self-defense is a justification defense to the crime of battery of an officer. *See* LSA-R.S. 14:19; *Louisiana v. Blancaneaux*, 535 So.2d 1341 (La.App.1988) (discussing justification defense to battery of officer conviction). To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself. *Blancaneaux*, 535 So.2d at 1342. Because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that Officers Defillo, Hingle, and Lanasa used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question [of] whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.

> *Hudson,* 98 F.3d at 873.

In Mississippi, self-defense is likewise a "justification" defense to the crime of assault on an officer.  *See Murrell v. State*, 655 So. 2d 881, 888 (Miss. 1995) (stating that the right to resist

---

[4] In her response to the Motion for Summary Judgment, "White admits that while she was handcuffed and bent over the hood of the patrol car[,] she 'mule-kicked' Howell 'in response' to Howell breaking her collar bone." (Dkt. [19] at 5).

an arrest or "self-help" is only available in circumstances involving an illegal arrest or where excessive force is used in making the arrest); *see also Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991); *Johnson v. State*, 754 So.2d 576, 579 (Miss. Ct. App. 2000) ("A defense to the charge of an assault or battery is that the person was acting in self-defense.").  To successfully argue self-defense, a criminal defendant charged with assault must show that the force used by the defendant was reasonable and that he reasonably believed bodily harm was about to be intentionally inflicted upon him.  *Webb v. Jackson*, 583 So.2d at 951.  Additionally, the lawful use of force to resist an arrest is allowed but "limited to those situations where the arrest is in fact illegal… *or where the arrest is accompanied by excessive force*."  *Murrell v. State*, 655 So. 2d at 888 (emphasis added); *see also Johnson v. State*, 754 So. 2d at 579.

White pled guilty to simple assault on an officer based on the "kick" at issue. (Dkt. [16-8]).  If, as she now alleges, her assault on Howell was in response to his use of excessive force, it necessarily follows that White lawfully resisted arrest, which undermines the validity her prior conviction.  *See Brown v. State*, 852 So. 2d 607, 611 (Miss. Ct. App. 2003) (stating that a person may use reasonable force to resist an illegal arrest under Mississippi law).  Simply stated, a Mississippi conviction for assault of an officer – a crime for which self-defense is an affirmative defense – prevents White from suing for excessive force in connection with the incident.[5]  *See Hudson*, 98 F.3d at 873*; Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004).  If White proved her excessive force claim, she would also prove that her assault on Howell was justified, which would thereby "imply the invalidity" of her assault conviction. *See Arnold,* 100

---

[5] The Fifth Circuit has recognized that "the conceptual difference between an excessive force claim and a challenge to a conviction 'may be applicable in many § 1983 claims of excessive force,'" but "that certain convictions will prevent a plaintiff from bringing an excessive force claim." *Arnold*, 100 F. App'x at 323 (quoting *Hudson*, 98 F.3d at 873).

F. App'x at 323 (holding that the plaintiff's successful suit on an excessive force claim would necessarily imply the invalidity of her conviction for assault upon a law enforcement officer). As such, the Plaintiff's excessive force claim is barred by *Heck*.

White contends that the Fifth Circuit's disposition in the matter of *Bush v. Strain* should be looked to for guidance in this case.[6] The plaintiff in *Bush* had previously been convicted of resisting arrest, and later brought a § 1983 action in which she claimed that she stopped resisting arrest prior to an arresting officer crashing her head into a car window.  *Bush*, 513 F.3d at 495-96. The trial court entered summary judgment on the plaintiff's § 1983 claim finding the *Heck* rule barred her claims because she was resisting arrest *at the time* she was injured. *Id.* at 498-99 (emphasis added).  On appeal, the Fifth Circuit, applying *Heck,* reversed the trial court's grant of summary judgment and found that the plaintiff's claim was not barred because she presented evidence showing that she had ceased resisting arrest *prior* to the alleged use of excessive force. *Id.* at 500 (emphasis added).  The court stated that "the fact findings essential to [the plaintiff's] criminal conviction are not inherently at odds with [the excessive force] claim" and, therefore, a favorable ruling on that claim would not undermine her criminal conviction.  *Id.*  The court further held "that [the plaintiff's] excessive force claim is conceptually distinct from the facts underlying her criminal conviction, and, thus, is not barred."  *Id.* at 502.

---

[6] The Plaintiff also asserts that this claim is not barred by *Heck*, because it is not a claim to "recover damages for allegedly unconstitutional conviction or imprisonment." *Heck,* 512 U.S. at 487.  However, what was overlooked is that the aforementioned phrase in its entirety includes claims for "allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*." *Id.* (emphasis added).

13

The temporal and conceptual aspects of the facts in *Bush* make it distinguishable from this one.  In *Bush,* the alleged use of excessive force arguably occurred *after* and not *before* the plaintiff ceased the criminal conduct which led to her underlying conviction (resisting arrest).  Because she may have stopped resisting arrest before the officer used excessive force against her, the plaintiff's § 1983 claim and her underlying conviction were both temporally and conceptually independent from one another.

In this case, however, the Plaintiff's underlying conviction and § 1983 claim are temporally and conceptually interwoven. White admits that she "mule-kicked" Howell in response to him allegedly using excessive force while arresting her.  *See* (Dkt. [19] at 5).  Under Mississippi law, the validity of White's simple assault conviction depends upon or presupposes that Howell did not provoke her to attack him.  If Howell used excessive force against White, the "mule-kick" may have been lawful (i.e., self-defense), which would thereby undermine the Plaintiff's conviction.

It is clear that the Plaintiff cannot prevail on her § 1983 excessive force claim without simultaneously invalidating her conviction for simple assault under Mississippi law.  Success on White's § 1983 claim and the continued validity of her conviction are mutually exclusive outcomes.  Summary judgment should be granted in favor of Howell with respect to the excessive force claim under § 1983 based on the favorable termination rule in *Heck*.

## II. Motion to Dismiss State Law Claims

In her complaint, White states a claim against Defendant Adkins in his former official capacity as Sheriff of Neshoba County.  She asserts that Defendant Adkins is vicariously liable for the Howell's alleged use of excessive force pursuant Miss. Code. Ann. § 19-25-19. (Dkt. [1]).

14

That section provides that "[a]ll sheriffs shall be liable for the acts of their deputies…." Miss. Code Ann. § 19-25-19.  The Defendants seek dismissal of White's state law claims pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A Rule 12(b)(6) motion is disfavored, and it is rarely granted. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986); *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). In deciding a motion to dismiss under Rule 12(b)(1) or (6), the district court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis–Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir. 1995). "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper. *Id.* It must appear beyond doubt that the plaintiff "can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotations omitted).  The complaint, however, must include "'either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Id.* (quoting 3 Wright & Miller, *Federal Practice & Procedure*: *Civil* 2d 1216, pp. 156–59).

"To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." *Clark*, 794 F.2d at 970; *see also Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 926 (5th Cir. 1988); *United States v. Uvalde Consol. Indep. Sch. Dist.*, 625 F.2d 547, 549 (5th Cir. 1980), *cert. denied*, 451 U.S. 1002, 101 S.Ct. 2341, 68 L. Ed. 2d 858.  If a required element, a prerequisite to obtaining the requested relief, is lacking in the complaint, dismissal is proper. *See id.; Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("Conclusory allegations or

15

legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). A claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings. *Clark*, 794 F.2d at 970; *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L. Ed. 2d 953.

The Defendants contend that White's state law claim under Miss. Code Ann. § 19-25-19 is barred because she failed to meet the notice of claim provisions of the Mississippi Tort Claims Act ("MTCA"), Miss. Code. Ann. § 11-46-1. White counters that argument by contending that her claims against Defendant Adkins were brought pursuant to § 19-25-19, and therefore, the provisions of the MTCA do not apply.

The MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability. Miss. Code Ann. § 11-46-7(1); *Elkins v. McKenzie*, 865 So. 2d 1065, 1078 (Miss. 2003) (internal citations omitted); *L.W. v. McComb Separate Municipal School District*, 754 So. 2d 1136, 1138 (Miss.1999); *Moore v. Carroll County, Miss.*, 960 F. Supp. 1084, 1088 (N.D. Miss. 1997). However, § 11-46-9(1)(c) provides:

> [a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police … unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

"Thus, if a deputy escapes liability … no liability exists to be derivatively placed upon the shoulders of his sheriff." *Howard v. Tunica Cnty., Miss.*, No. 299cv158–DB, 2000 WL

33907689, at *4 (N.D. Miss. Aug. 8, 2000); *see also Graves v. Hinds Cnty., Miss.,* 3:11CV278-DPJ-FKB, 2012 WL 2574494 (S.D. Miss. July 2, 2012).

The Mississippi Court of Appeals has concluded that § 19–25–19, which was adopted before the MTCA, only operates if the deputy's acts are actionable under the MTCA. *Jackson v. Payne*, 922 So. 2d 48, 52 (Miss. Ct. App. 2006) (stating that in order for the plaintiff to rely on Section 19–25–19, he "must establish liability on the part of [the deputy] in accordance with the MTCA, and only then can [the sheriff] be liable"); *see also Graves v. Hinds Cnty., Miss.,* 3:11CV278-DPJ-FKB, 2012 WL 2574494 (S.D. Miss. July 2, 2012).  In order to bring an action pursuant the MTCA, notice of claim must be filed with the chief executive officer of the governmental entity ninety (90) days prior to instituting a civil action thereon. Miss. Code Ann. § 11-46-11(1). The Mississippi Supreme Court requires strict compliance to the 90-day notice requirement. *South Regional Medical Center v. Guffy*, 930 So. 2d 1252, 1258-59 (Miss. 2006); *University of Mississippi Medical Center v. Easterling*, 928 So. 2d 815 (Miss. 2006). In both *Guffy* and *Easterling*, the Mississippi Supreme Court dismissed plaintiffs' claims for failure to comply strictly with the 90-day notice requirement.

Fulfillment of the MTCA's provisions appears to be a prerequisite under Mississippi law for bringing a viable claim under Miss. Code Ann. § 19-25-19.  Thus, White's argument that her claims are brought under § 19-25-19 does not excuse her from complying with the notice provisions under the MTCA.  The incident between White and Howell occurred on March 2, 2009, which, per the MTCA, required the Plaintiff to file notice of claim on or prior to March 2, 2010.  White, however, never sent a notice of claim to Adkins.  Thus, she has failed to comply with the 90-day notice requirement.  Accordingly, White's state law claim against Adkins should

17

be dismissed.  *See Comer v. Lindley,* 1:06CV299-SA-JAD, 2008 WL 2704593 (N.D. Miss. July 7, 2008) *aff'd*, 318 F. App'x 300 (5th Cir. 2009).

Even so, Adkins still cannot be held vicariously liable under § 19-25-19 for Howell's conduct because, as discussed *supra*, the excessive force claim against Howell is not actionable in light of *Heck*.  The liability imposed on sheriffs pursuant to § 19–25–19 is derivative of that imposed on deputies. *Barrett v. Miller*, 599 So. 2d 559, 566 (Miss. 1992) ("It goes without saying that the sheriff can be held liable only if the deputies have done something wrong"); *see Moore v. Carroll Cnty., Miss.*, 960 F. Supp. 1084, 1089 (N.D. Miss. 1997).

The undersigned is of the opinion that the § 1983 claims against Howell should be dismissed due to the applicability of the *Heck* rule.  Likewise, Howell's claim against former sheriff Adkins under § 19-25-19 should also be dismissed.

## RECOMMENDATIONS

In light of the foregoing, the undersigned recommends that Defendant Howell's Motion for Summary Judgment [16] be granted.  The undersigned further recommends that the Defendants' Motion to Dismiss [6] the state law claims asserted against them be granted and that this case be finally dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are

18

hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 21st day of August, 2013.

/s/**MICHAEL T. PARKER**
UNITED STATES MAGISTRATE JUDGE